UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DYOVENSON DIXON,

      Plaintiff,

v.

SECRETARY KRISTI NOEM, DEPARTMENT OF HOMELAND SECURITY; ATTORNEY GENERAL PAMELA BONDI, EXECUTIVE OFFICE FOR IMMIGRATION; GARRETT RIPA, MIAMI FIELD OFFICE DIRECTOR, ICE ENFORCEMENT AND REMOVAL OPERATIONS; IMMIGRATION AND CUSTOMS ENFORCEMENT, WARDEN WILLIAM PAYNE, GLADES COUNTY DETENTION CENTER,

      Defendants.

Case No. 2:25-cv-1067-KCD-DNF

## **ORDER**

      This case asks a simple question: where was Petitioner Dyovenson Dixon when the Government detained him? If, as the Government contends, Dixon was arriving at the border, then the Immigration and Nationality Act (INA) mandates his detention without a bond hearing. *See* 8 U.S.C. § 1225(b)(2)(A), *Garcia v. United States*, No. 2:25-CV-1053-KCD-DNF, 2025 WL 3537592, at *1 (M.D. Fla. Dec. 10, 2025). But if Dixon was already inside the country—living here, albeit without proper documentation—then the law

grants him the right to ask an immigration judge for release on bond while his removal proceedings play out. *See* 8 U.S.C. § 1226(a), *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *2 (M.D. Fla. Oct. 29, 2025).

Dixon lived in the U.S. Virgin Islands for nearly a year before he went to catch a flight to Florida. The Government says that trip to the airport transformed him back into an "applicant for admission" arriving at the border. (Doc. 7 at 3.) But the Court is not convinced. Because Dixon was living in the United States and apprehended in its interior, he is entitled to a bond hearing.

## I. Background

The facts are undisputed. Dixon is a noncitizen who entered the United States without inspection in early 2025. He did not, however, initially come to the mainland. Instead, he made his home in the U.S. Virgin Islands. He lived there for roughly ten months. (Doc. 4 ¶ 2.)

In November 2025, Dixon went to catch a flight to Florida. At the airport checkpoint, Customs and Border Protection officers detained him. He was later transferred to immigration custody and is currently held at the Glades County Detention Center. (*Id.* ¶¶ 2-3.)

Dixon has been denied a bond hearing. (*Id.* ¶ 8.) Relying on a recent Board of Immigration Appeals decision, *Matter of Yajure Hurtado*, the

2

Government classifies Dixon as an "applicant for admission" under 8 U.S.C. § 1225. (Doc. 4 ¶ 29.) Under that view, because Dixon entered without inspection, he remains an arriving alien subject to mandatory detention, no matter how long he has lived here.

Dixon has filed a habeas corpus petition, arguing that his detention is instead governed by § 1226(a), which authorizes discretionary release. In other words, he is entitled to a bond hearing. (Doc. 4 ¶ 3.)

## II. Discussion

How the INA applies to aliens arriving in the United States versus those already here is a matter of much debate. *Compare Garcia v. Noem*, No. 2:25-CV-00879-SPC-NPM, 2025 WL 3041895, at *6 (M.D. Fla. Oct. 31, 2025), *with Valencia v. Chestnut*, No. 1:25-CV-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025). In this Court's view, the INA creates two distinct worlds of immigration detention, separated by the concept of admission.

The first world is governed by § 1225. This section applies to aliens "seeking to enter the country." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). It is the realm of the border. When a person shows up at a port of entry—or is caught trying to sneak across the line—they have not yet effected an entry in the eyes of the law. For these individuals, detention is generally mandatory during removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

3

The second world is governed by § 1226. This section applies to aliens who are "already in the country." *Jennings*, 583 U.S. at 289. It is the realm of the interior. When the Government arrests a noncitizen who is already present and residing in the United States, they are detained pending a decision on whether they should be removed. For these individuals, the default rule is that they may be released on bond or conditional parole if they are not a flight risk or a danger to the community. *See* 8 U.S.C. § 1226(a).

The dispute here is which world Dixon lives in.

The Government contends that this Court's decision in *Garcia v. United States* gives the answer. No. 2:25-CV-1053-KCD-DNF, 2025 WL 3537592 (M.D. Fla. Dec. 10, 2025). In that case, the petitioner was apprehended at the border immediately upon entry. Although he was later paroled into the country, his legal status remained frozen at the threshold of entry. Because he was caught at the border seeking admission, it was found that § 1225 applied. *Id.*

The Government tries to squeeze Dixon into the *Garcia* box. It argues that the airport checkpoint is the legal "equivalent of the American border," and therefore, Dixon was an "applicant for admission" just like Garcia. (Doc. 7 at 3.) The Court cannot agree.

The Government makes much of the fact that travelers flying from the Virgin Islands to the mainland are subject to customs inspections. But the

4

existence of an administrative checkpoint does not erase the months Dixon spent residing within U.S. jurisdiction. Unlike the petitioner in *Garcia*, who was caught at the literal line between Mexico and the United States, Dixon was not "arriving." He was traveling domestically.

This Court has already rejected the theory that any entrant without inspection is permanently stuck in § 1225 status. Rather, § 1226(a) is the proper home for noncitizens who are arrested in the interior after establishing a presence here. *See Lopez*, 2025 WL 3022245, at *2. Dixon fits squarely within this framework. He was not caught at the border seeking initial entry. He was living in the United States for nearly a year. When ICE seized him, they detained a resident, not an arrival. Therefore, the mandatory detention provisions of § 1225 do not apply.

As a noncitizen who should be detained under § 1226, Dixon is entitled to a bond hearing. *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

A few ancillary matters remain. Dixon seeks a writ of habeas corpus ordering his release from custody. (Doc. 4 at 18.) But that is not something the Court can do. "[Section] 1226(a)(1) grants the executive branch discretion to determine whether to detain or release a noncitizen who is facing removal proceedings." *Hulke v. Schmidt*, 572 F. Supp. 3d 593, 596 (E.D. Wis. 2021).

5

Dixon is an alien without lawful status. So he is entitled to a bond hearing under § 1226(a), not immediate release. *See, e.g.*, *Lopez-Arevelo*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *12 (W.D. Tex. Sept. 22, 2025). Consistent with the "comfortable majority position," the Court will instead require the Government to provide Dixon with the statutory process required under § 1226(a), which includes a bond hearing. *Id.*

Dixon separately asks this Court to order a "credible fear" or "reasonable fear" interview, to prohibit his transfer to another facility, and to compel the release of his immigration records. (Doc. 4 at 17-18.) These requests wander far afield from the core statutory question presented here. Dixon offers no legal basis for why a defect in his detention authority entitles him to judicial micromanagement of his asylum interviews or internal record-keeping. Because these requests are untethered to the statutory interpretation governing his custody and are otherwise unsupported by the record, they are denied.

Dixon's petition also challenges his detention under the Fifth Amendment and the Administrative Procedure Act. These claims are not addressed "given that the Court [is granting] the relief [Dixon is entitled to] based on its interpretation of the applicability of § 1226(a)." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *8 (E.D. Mich. Sept. 9, 2025). If the Government does not provide Dixon with a bond hearing as

6

ordered, he can renew his ancillary claims in a subsequent, appropriate complaint

Finally, several defendants raise an argument that they are not proper parties. (Doc. 7 at 1.) But it's not clear, even from the Government's brief, who can grant the relief ordered here. *See Sanchez-Penunuri v. Longshore*, 7 F. Supp. 3d 1136, 1150 (D. Colo. 2013); *Masingene v. Martin*, 424 F. Supp. 3d 1298, 1302 (S.D. Fla. 2020). So the Court will simply direct that Dixon receive a bond hearing, and leave it to the defendants to decide who has that authority.

For the reasons given, Dixon's First Amended Petition for Writ of Habeas Corpus (Doc. 4) is **GRANTED IN PART AND DENIED IN PART**. The Court orders the Government to provide Dixon with the statutory process required under § 1226, which includes a bond hearing. All other relief is **DENIED**. The Clerk is directed to terminate any pending motions and deadlines and close the case.

**ORDERED** in Fort Myers, Florida on January 16, 2026.

Kyle C. Dudek
United States District Judge